August Constr. Group, Inc. v DeGroat (2023 NY Slip Op 50604(U))

[*1]

August Constr. Group, Inc. v DeGroat

2023 NY Slip Op 50604(U)

Decided on June 21, 2023

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 21, 2023
Supreme Court, Bronx County

August Construction Group, Inc. AND ANDREW TONAJ, Plaintiff(s),

against
Kevin DeGroat, Defendant.

Index No. 802374/23E

Counsel for plaintiffs: Law Offices of Brian K, Bernstein, P.C.
Counsel for defendant: Bond, Schoeneck & King, PLLC

Fidel E. Gomez, J.

In this action for, inter alia, tortious interference with contract, defendant moves seeking an order dismissing the complaint pursuant to CPLR § 3211(a)(7). Defendant avers that thecomplaint fails to plead specific, and at times necessary facts sufficient to establish each and every cause of action asserted by plaintiffs. Plaintiffs oppose the instant motion, asserting that the complaint sufficiently pleads the causes of action asserted therein. Plaintiffs also cross-move seeking an order pursuant to CPLR § 3025(b), granting them leave to amend the complaint to address the pleading deficiencies raised by defendant in his motion. Plaintiffs contend that in light of the infancy of the instant litigation, defendant will not be prejudiced by the amendment. Defendant opposes the instant cross-motion, asserting that because the proposed amended complaint is afflicted with the same fatal deficiencies on which his motion is premised, the amended complaint, failing to plead the causes of action asserted, is palpably insufficient or patently devoid of merit. 
For the reasons that follow hereinafter, defendant's motion is granted and plaintiffs' cross-motion is granted, in part.
The instant action is for tortious interference with contract, tortious interference with [*2]prospective economic advantage, prima facie tort, and libel per se. The complaint alleges that on August 16, 2018, plaintiff AUGUST CONSTRUCTION GROUP, INC. (August) entered into an agreement with nonparty the College of Mount Saint Vincent (CMSV), whereby August was retained to perform general contracting work, namely the construction of a residence hall and a nursing simulation lab on CMSV's campus (the project). Defendant, CMSV's Vice President of Operations, who was not a party to the foregoing agreement, nevertheless served as the primary contact with both August and plaintiff ANDREW TONAJ (Tonaj) - August's Chief Executive Officer - with respect to the agreement. On August 31, CMSV, by counsel, terminated the foregoing agreement. At the time of termination, CMSV owed August $1,370,506.50 with respect to the work in the agreement. As such, with regard to the sums alleged to be due, CMSV and August have initiated mediation proceedings, to which neither defendant nor Tonaj are parties. On April 20, 2022, defendant sent an email to plaintiffs' subcontractors/vendors apprising them that all punch list items on the project had been completed, which statements were at variance with defendant's statements to August. Thereafter, on April 22, 2022, defendant sent an email to plaintiffs' subcontractors/vendors on the project, in defendant's personal capacity and with no authority from CMSV, falsely and disparagingly apprising them that other than final retainage payments and less any charge backs, with respect to the project, August had been paid in full, such that all subcontractors/vendors should have been fully paid. Defendant also invited the foregoing subcontractors to work directly with CMSV, which circumvented and damaged the relationship between August and its subcontractors. It is alleged that from the inception, defendant acted with personal animus toward Tonaj, that defendant knew or should have known about the relationships and contracts between August and its subcontractors/vendors, and about the contract between August and CMSV. It is further alleged that defendant knowingly and tortiously interfered with the relationship between Tonaj and his subcontractor/vendors, the contracts between them, and the contract between August and CMSV. It is alleged that defendant intentionally, willfully and maliciously interfered with plaintiffs' business relationships with their subcontractors/vendors, such that he interfered with plaintiffs' prospective economic advantage. Defendant's representations to the subcontractor/vendors were knowingly false and materially interfered with the contracts between August and their subcontractor/vendors and as a result thereof, the subcontractors did not return to the project, which made it impossible and/or materially impaired August's ability to perform remedial work at on the project, as requested by CMSV. Moreover, the foregoing impaired and/or interfered with August's ability to complete the work required by the agreement between CMSV and August, and precipitated CMSV's termination of the Agreement. Lastly, defendant's conduct created a hostile relationship between Tonaj and at least one subcontractor inasmuch as the subcontractor threatened Tonaj and his family.
Based on the foregoing, plaintiffs interpose six causes of action. The first is for tortious interference with contract between August and its subcontractors/vendors. It is alleged that defendant was aware of the valid and enforceable agreements between August and its subcontractors/vendors and intentionally interfered with the same by falsely informing them that CMSV had fully paid August and that all of August's subcontractors/vendors should have been paid in full. The foregoing is alleged to have materially interfered with the foregoing contracts, in that August could not get the subcontractors to return to the project, thereby significantly impairing August's ability to complete the project. The foregoing is alleged to have damaged [*3]plaintiffs in the amount of $1,370,506.50. The second cause of action is also for tortious interference with contract, except that it is alleged that defendant interfered with the agreement between August and CMSV. The allegations in support of this cause of action are identical to those pleaded with respect to the first cause of action, except that it is alleged that defendant's conduct interfered with the contract between August and CMSV, thereby contributing to its termination. The third cause of action is for tortious interference with August's prospective economic advantage. It is alleged that defendant willfully and maliciously, with intent to cause harm, interfered with August's business relationships with its subcontractors, thereby interfering with August's prospective economic advantage. The foregoing is alleged to have damaged plaintiffs in the amount of $467,979.26. The fourth cause of action is for tortious interference with Tonaj's prospective economic advantage. It is alleged that defendant willfully and maliciously, with intent to cause harm, interfered with Tonaj's business relationships with its subcontractors, thereby interfering with Tonaj's prospective economic advantage. The foregoing is alleged to have damaged plaintiffs in the amount of $500,000. The fifth cause of action is for prima facie tort on behalf of Tonaj. It is alleged that by sending Tonaj's subcontractors emails on April 20 and 22, 2022, defendant, acting with personal animus toward Tonaj, intentionally inflicted inexcusable damage upon Tonaj. Specifically, defendant negatively and permanently damaged Tonaj's relationship with his subcontractors. It is alleged that defendant willfully and maliciously, with intent to cause harm, interfered with Tonaj's business relationships with its subcontractors, thereby interfering with Tonaj's prospective economic advantage. The foregoing is alleged to have damaged plaintiffs in the amount of $467,979.26. The sixth and last cause of action is for libel per se. It is alleged that the email sent to plaintiffs' subcontractors/vendors on April 22, 2022, conveyed false and defamatory information, which injured plaintiffs' business, trade and/or profession. The foregoing is alleged to have damaged plaintiffs in the amount of $500,000.

DEFENDANT'S MOTION TO DISMISS
Defendant's motion to dismiss is granted. Significantly, the allegations in the complaint, taken as true, fail to sufficiently state any of the causes of action alleged therein.

 Standard of Review
On a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7), all allegations in the complaint are deemed to be true (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]). All reasonable inferences which can be drawn from the complaint and the allegations therein stated shall be resolved in favor of the plaintiff (Cron at 366). In opposition to such a motion a plaintiff may submit affidavits to remedy defects in the complaint (id.). If an affidavit is submitted for that purpose, it shall be given its most favorable intendment (id.). The court's role when analyzing the complaint in the context of a motion to dismiss is to determine whether the facts as alleged fit within any cognizable legal theory (Sokoloff at 414). In fact, the law mandates that the court's inquiry be not limited solely to deciding whether plaintiff has pled the cause of action intended, but instead, the court must determine whether the plaintiff has pled any cognizable cause of action (Leon v Martinez, 84 NY2d 83, 88 [1994] ["(T)he criterion is whether the proponent of the pleading has [*4]a cause of action, not whether he has stated one."]). However, "when evidentiary material [in support of dismissal] is considered the criterion is whether the proponent of the pleading has a cause of action not whether he has stated one" (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
Significantly, documentary evidence means judicial records, judgments, orders, contracts, deeds, wills, mortgages and "a paper whose content is essentially undeniable and which, assuming the verity of its contents and the validity of its execution, will itself support the ground upon which the motion is based" (Webster Estate of Webster v State of New York, 2003 WL 728780, at *1 [Ct Cl Jan. 30, 2003]). Accordingly, much like on a motion seeking dismissal pursuant to CPLR § 3211(a)(1), where affidavits and deposition transcripts are not documentary evidence sufficient to establish a right to dismissal (Fleming v Kamden Properties, LLC, 41 AD3d 781, 781 [2d Dept 2007]; Berger v Temple Beth-El of Great Neck, 303 AD2d 346, 347 [2d Dept 2003]), "affidavits submitted by a defendant [in support of a motion pursuant to CPLR § 3211(a)(7)] will almost never warrant dismissal under CPLR 3211 unless they establish conclusively that the plaintiff has no cause of action" (Sokol v Leader, 74 AD3d 1180, 1182 [2d Dept 2010] [internal quotation marks omitted and emphasis added]; see Rovello v Orofino Realty Co., Inc., 40 NY2d 633, 636 [1976] ["affidavits submitted by the defendant will seldom if ever warrant the relief he seeks unless too the affidavits establish conclusively that plaintiff has no cause of action."]; Matter of Lawrence v Miller, 11 NY3d 588, 595 [2008]).
CPLR § 3013 states that
[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.
As such, a complaint must contain facts essential to give notice of a claim or defense (DiMauro v Metropolitan Suburban Bus Authority, 105 AD2d 236, 239 [2d Dept 1984]). Vague and conclusory allegations will not suffice (id.); Fowler v American Lawyer Media, Inc., 306 AD2d 113, 113 [1st Dept 2003]); Shariff v Murray, 33 AD3d 688, 690 [2d Dept 2006]; Stoianoff v Gahona, 248 AD2d 525, 526 [2d Dept 1998]). When the allegations in a complaint are vague or conclusory, dismissal for failure to state a cause of action is warranted (Schuckman Realty, Inc. v Marine Midland Bank, N.A., 244 AD2d 400, 401 [2d Dept 1997]; O'Riordan v Suffolk Chapter, Local No. 852, Civil Service Employees Association, Inc., 95 AD2d 800, 800 [2d Dept 1983]). While generally, on a motion to dismiss the complaint for its failure to state a cause of action, the facts in the complaint are deemed true, "bare legal conclusions and factual claims which are flatly contradicted by the record are not presumed to be true" (Parola, Gross & Marino, P.C. v Susskind, 43 AD3d 1020, 1021-1022 [2d Dept 2007]; Meyer v Guinta, 262 AD2d 463, 464 [2d Dept 1999]).

Applicable Law
It is well settled that the elements of a cause of action for tortious interference with contract are the existence of a valid contract, the tortfeasor's knowledge of its existence and intentional interference with the contract by the tortfeasor, the resulting breach, damages (White [*5]Plains Coat & Apron Co., Inc. v Cintas Corp., 8 NY3d 422, 426 [2007]; Lama Holding Co. v Smith Barney Inc., 88 NY2d 413, 424 [1996]; Israel v Wood Dolson Co., 1 NY2d 116, 120 [1956]; MVB Collision, Inc. v Allstate Ins. Co., 129 AD3d 1041, 1043 [2d Dept 2015]; AREP Fifty-Seventh, LLC v PMGP Assoc., L.P., 115 AD3d 402, 402 [1st Dept 2014]; Crown Assoc., Inc. v Zot, LLC, 83 AD3d 765, 768 [2d Dept 2011] Hoag v Chancellor, Inc., 246 AD2d 224, 228 [1st Dept 1998]; John R. Loftus, Inc. v White, 150 AD2d 857, 859 [3d Dept 1989]), that the tortfeasor interfered with the contract without economic justification (Lama Holding Co. at 424; MVB Collision, Inc. at 1043; Levine v Yokell, 258 AD2d 296, 296 [1st Dept 1999]), and that but for the tortfeasor's conduct, there would have been no breach of the contract (Pursuit Inv. Mgt. LLC v Alpha Beta Capital Partners, L.P., 127 AD3d 580, 581 [1st Dept 2015]; (Burrowes v Combs, 25 AD3d 370, 373 [1st Dept 2006] ["Specifically, a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct."]; Cantor Fitzgerald Assoc., L.P. v Tradition N. Am., Inc., 299 AD2d 204, 204 [1st Dept 2002]; Washington Ave. Assoc., Inc. v Euclid Equip., Inc., 229 AD2d 486, 487 [2d Dept 1996]).
Moreover, "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract" (Bradbury v Israel, 204 AD3d 563, 564 [1st Dept 2022]; Winicki v City of Olean, 203 AD2d 893, 894 [4th Dept 1994]; Koret, Inc. v Christian Dior, S.A., 161 AD2d 156, 157 [1st Dept 1990]; Greyhound Corp. v Commercial Cas. Ins. Co., 259 AD 317, 320-321 [1st Dept 1940]).
The proponent of a claim for tortious interference with prospective economic advantage must demonstrate that defendant interfered with plaintiff's prospective business relations by utilizing wrongful means or that the defendant acted solely to harm the plaintiff (Tsatskin v Kordonsky, 189 AD3d 1296, 1298 [2d Dept 2020]; Moulton Paving, LLC v Town of Poughkeepsie, 98 AD3d 1009, 1013 [2d Dept 2012]; Caprer v Nussbaum, 36 AD3d 176, 204 [2d Dept 2006]). Indeed, it must be alleged that defendant acted solely out of malice, that but for defendant's conduct, plaintiff and a third-party would have consummated a contract, and the third-party with whom contractual relations were thwarted must be identified (Trepel v Hodgins, 183 AD3d 429, 429 [1st Dept 2020] ["The tortious interference with prospective business relations claim does not allege that the New York defendants acted solely out of malice or employed wrongful means or that a contract would have been entered into with any third party 'but for' their conduct, and it does not identify any such third party."]; Kickertz v New York Univ., 110 AD3d 268, 275 [1st Dept 2013]; Am. Preferred Prescription, Inc. v Health Mgt., Inc., 252 AD2d 414, 418 [1st Dept 1998]). Significantly, defendant's "wrongful conduct must amount to a crime or an independent tort, and may consist of physical violence, fraud or misrepresentation, civil suits and criminal prosecutions" (Tsatskin at 1298; Moulton Paving, LLC at 767; Am. Preferred Prescription, Inc. at 418;see Guard-Life Corp. v S. Parker Hardware Mfg. Corp., 50 NY2d 183, 191 [1980]; Smith v Meridian Tech., Inc., 86 AD3d 557, 560 [2d Dept 2011]). Absent the allegation of an independent tort, claims that a defendant maliciously and deceitfully interfered with the consummation of a contract are clearly insufficient (Kickertz at 275; Gertler v Goodgold, 107 AD2d 481, 490 [1st Dept 1985], affd, 66 NY2d 946 [1985]). Indeed, economic pressure is insufficient to establish a claim for tortious interference with prospective economic advantage (Carvel Corp. v Noonan, 3 NY3d 182, 192 [2004] ["While economic pressure brought to bear by one contracting party on the other may, on rare occasions, be tortious, it cannot constitute the tort of interference with economic relations. Here, all Carvel did to the franchisees' customers was to make Carvel goods available in supermarkets at attractive prices; this, in the [*6]language of Guard-Life, was not 'pressure' on these third parties but legitimate 'persuasion,' and thus tortious interference with economic relations was not established" (internal quotation and citation marks omitted).]). Moreover, interference by "persuasion alone although it is knowingly directed at interference with the contract" (Guard-Life Corp. at 191) is insufficient for purposes of a claim tortious interference with prospective economic advantage (id.; Smith at 560). Since, "conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship" (Carvel Corp. at 192; Bradbury v Israel, 204 AD3d 563, 565 [1st Dept 2022]; Rockwell Glob. Capital, LLC v Soreide Law Group, PLLC, 100 AD3d 448, 449 [1st Dept 2012]), any claim asserting the same must also allege that the tortious conduct was directed at a third-party (Piccoli A/S v Calvin Klein Jeans-wear Co., 19 F Supp 2d 157, 167-168 [SD NY 1998] ["claim must fail because 'defendants' alleged conduct concededly was not directed towards any third party with whom Piccoli had an existing or prospective business relationship']; Bradbury at 565).
A cause of action for prima facie tort requires proof of the intentional infliction of harm without any excuse or justification, by an act or series of acts which would otherwise be lawful, which results in special damages (Freihofer v Hearst Corp., 65 NY2d 135, 142 [1985]; Curiano v Suozzi, 63 NY2d 113, 117 [1984]; Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 332 [1983]; Kickertz at 277; Smith at 558-559). Unless malevolence, meaning a desire to injure the plaintiff, is the sole motive for a defendant's conduct, there will be no recovery for a claim sounding in prima facie tort (Burns Jackson Miller Summit & Spitzer at 333 [1983]; Kickertz at 277; Smith at 558-559). Stated differently, where defendant's actions have any other motive except malevolence, a cause of action for prima facie tort will not lie (Smith at 558-559; Weaver v Putnam Hosp. Ctr., 142 AD2d 641, 642 [2d Dept 1988] ["In this case the motive was not to injure the plaintiff but to fulfill the decedent's wishes. The plaintiff has offered no proof showing contrary intent. Accordingly, the Supreme Court acted properly in granting the defendants' motion for summary judgment dismissing the complaint."]). The special damages pleaded in connection with a cause of action for prima facie tort must be specific and measurable (Bohn v 176 W. 87th St. Owners Corp., 106 AD3d 598, 599 [1st Dept 2013]). Thus, bare and conclusory allegations of damages, will not state a cause of action for prima facie tort (Wehringer v Helmsley-Spear, Inc., 91 AD2d 585, 586 [1st Dept 1982] ["One of the essential elements of the cause of action is an allegation that plaintiff suffered specific and measurable loss. Accordingly, it has been held that an action sounding in prima facie tort may not be maintained in the absence of an allegation of special damages. Here, no special damages are alleged and it is clear that none exist. The complaint asserts in most general fashion that plaintiff suffered damages in the amount of not less than one hundred thousand dollars" (internal citations and quotation marks omitted)., affd, 59 NY2d 688 (1983)]). 
An action for defamation is one where a defendant is accused of making a
 false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society
 (Foster v Churchill, 87 NY2d 744, 751 (1996); see, Manfredonia v Wiess, 37 AD3d 286 [1st Dept 2007]; Dillon v City of New York, 261 AD2d 34, 37-38 [1st Dept 1999]; Fairley v Peekskill Star Corporation, 83 AD2d 294, 296 [2d Dept 1981]). The elements of an action for defamation are (1) the publishing of a false statement to a third party; (2) publishing said statement without authorization or privilege; (3) fault, judged at a [*7]minimum by a negligence standard; and (4) special harm or defamation per se (Dillon at 38; Salvatore v Kumar, 45 AD3d 560, 563 [2d Dept 2007]). Statements are defamatory per se when they charge plaintiff with a serious crime, tend to injure another in plaintiff's trade, business or profession, allege plaintiff has a loathsome disease, or impute unchastity to a woman (Liberman v Gelstein, 80 NY2d 429, 435 [1992]). 
Special harm or special damage means the loss of something having economic or pecuniary value (Liberman at 434). Significantly, special damages must consist of the loss of something having economic or pecuniary value, "which must flow directly from the injury to reputation caused by the defamation and not from the effects of the defamation" (Franklin v Daily Holdings, Inc., 135 AD3d 87, 93 [1st Dept 2015] [internal quotation marks omitted]). Indeed, the assertion of damages via the interposition of a round numerical figure, which lacks itemization is insufficient to plead special damages (id. at 93; see Drug Research Corp. v Curtis Pub. Co., 7 NY2d 435, 441 [1960] ["The damage claimed is $5,000,000. Such round figures, with no attempt at itemization, must be deemed to be a representation of general damages. It is an established rule in New York that a libel on the product is actionable by the manufacturer only if special damages are alleged."]). Notably, special damages need not be pleaded or proven when the cause of action is for defamation per se (id. at 435; Rinaldi v Holt, Rinehart & Winston, Inc., 42 NY2d 369, 379 [1977]; Donati v Queens Ledger Newspaper Group, 240 AD2d 696, 697 [2d Dept 1997]).
Libel per se is a writing which exposes plaintiff to "public contempt, ridicule, aversion or disgrace, or induce[s] an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society" (Rinaldi at 379). Notably, a plaintiff seeking to recover on a cause of action asserting defamation per se on grounds that a defendant's statements have hurt his trade, business or profession, must prove that the defamation is of the kind incompatible with his business, trade, office, or profession and that the "statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities" (Liberman at 436). 
Whether a statement is defamatory is a question of law for the court to determine (Aronson v Wiersma, 65 NY2d 592, 593 [1985]; Franklin v Daily Holdings, Inc., 135 AD3d 87, 92 [1st Dept 2015]). As such,
 the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction 

(Dillon at 38; see Aronson at 594), and courts will not strain to find defamation where none exists (Cohn v Natl. Broadcasting Co., Inc., 50 NY2d 885, 887 [1980]; Dillon at 38; Fairley at 296). Accordingly, loose, figurative, or hyperbolic statements, even if deprecating are not actionable (Gross v New York Times Co., 82 NY2d 146, 152 [1993]; Dillon at 38).
The failure "to allege the time at which, the manner in which, and the persons to whom the publication was made, is fatal to a claim for defamation (Romanello v Intesa Sanpaolo S.p.A., 97 AD3d 449, 455 [1st Dept 2012], affd as mod, 22 NY3d 881 [2013]; Murphy v City of New York, 59 AD3d 301, 301 [1st Dept 2009]; Seltzer v Fields, 20 AD2d 60, 64 [1st Dept 1963], affd, 14 NY2d 624 [1964]).

Discussion
Defendant's motion seeking dismissal of the complaint is granted. Significantly, the allegations in the complaint are insufficient to plead any of the six causes of actions alleged.
As noted above, on a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7), all allegations in the complaint are deemed to be true (Sokoloff at 414; Cron at 366). All reasonable inferences which can be drawn from the complaint and the allegations therein stated shall be resolved in favor of the plaintiff (Cron at 366). The court's role when analyzing the complaint in the context of a motion to dismiss is to determine whether the facts as alleged fit within any cognizable legal theory (Sokoloff at 414). A complaint must contain facts essential to give notice of a claim or defense (DiMauro at 239). Accordingly, vague and conclusory allegations will not suffice (id.); Fowler at 113; Shariff at 690; Stoianoff at 526). When the allegations in a complaint are vague or conclusory, dismissal for failure to state a cause of action is warranted (Schuckman Realty, Inc. at 401; O'Riordan at 800).
Here, the first cause of action in the complaint for defendant's alleged tortious interference with the contract between August and its subcontractors/vendors is dismissed since the complaint fails to state a cause of action. Significantly, the elements of a cause of action for tortious interference with contract are the existence of a valid contract, the tortfeasor's knowledge of its existence and intentional interference with the contract by the tortfeasor, the resulting breach, and damages (White Plains Coat & Apron Co., Inc. at 426; Lama Holding Co. at 424; Israel at 120; MVB Collision, Inc. at 1043; AREP Fifty-Seventh, LLC at 402; Crown Assoc., Inc. at 768; Hoag at 228; John R. Loftus, Inc. at 859), that the tortfeasor interfered with the contract without economic justification (Lama Holding Co. at 424; MVB Collision, Inc. at 1043; Levine at 296), and that but for the tortfeasor's conduct, there would have been no breach of the contract (Pursuit Inv. Mgt. LLC at 581; Burrowes at 373; Cantor Fitzgerald Assoc., L.P. at 204; Washington Ave. Assoc., Inc. at 487). Here, the complaint fails to plead, as required, that defendant's conduct was bereft of any economic justification and that but for defendant's conduct, there would have been no breach of the contracts between August and its subcontractors/vendors. 
The second cause of action in the complaint for defendant's alleged tortious interference with the contract between August and CMSV is dismissed for the same reasons that the first cause of action did not state a claim thereunder. Again, the complaint is bereft of any allegations that defendant's conduct was bereft of any economic justification and that but for defendant's conduct, there would have been no breach of the contract between August and CMSV.
The third cause of action for defendant's alleged tortious interference with August's prospective economic advantage, premised on the interference of the relationship between August and its subcontractors/vendors, is dismissed since the complaint fails to state a cause of action. As noted above, the proponent of a claim for tortious interference with prospective economic advantage must demonstrate that defendant interfered with plaintiff's prospective business relations by utilizing wrongful means or that the defendant acted solely to harm the plaintiff (Tsatskin at 1298; Moulton Paving, LLC at 1013; Caprer at 204), that defendant acted solely out of malice, that but for defendant's conduct, plaintiff and a third-party would have consummated a contract, and the third-party with whom contractual relations were thwarted must be identified (Trepel at 429; Kickertz at 275; Am. Preferred Prescription, Inc. at 418). Moreover, defendant's "wrongful conduct must amount to a crime or an independent tort, and may consist of physical violence, fraud or misrepresentation, civil suits and criminal prosecutions" (Tsatskin at 1298; Moulton Paving, LLC at 767; Am. Preferred Prescription, Inc. at 418; see Guard-Life Corp. at 191; Smith at 560 [2d Dept 2011]). Absent the allegation of an independent tort, claims "that a defendant maliciously and deceitfully interfered with the [*8]consummation of a contract are clearly insufficient" (Kickertz at 275; Gertler at 490).
Here, the complaint fails to state a cause of action for tortious interference with prospective business advantage because it is bereft of any allegation that there was any contract, which but for defendant's interference, would have been consummated between August and its subcontractors/vendors. Moreover, the complaint fails to allege, as it must, that the alleged interference was solely out of malice and/or solely to harm August. Lastly, besides alleging that the statements made by defendant were false[FN1]
, there is no other and independent tortious conduct alleged. Indeed, here, the complaint merely alleges that defendant's conduct was conveying false information, in other words that he engaged in deceit, which is insufficient as a matter of law (Kickertz at 275; Gertler at 490).
The fourth cause of action for tortious interference with Tonaj's prospective economic advantage, premised on interference with the relationship between Tonaj and his subcontractors, is dismissed for the same reasons that the third cause of action was dismissed. Again, the complaint is bereft of any allegation that there was any contract, which but for defendant's interference, would have been consummated between Tonaj and his subcontractors, the complaint fails to allege, as it must, that the alleged interference was solely out of malice and/or solely to harm Tonaj, and as noted above, besides alleging that the statements made by defendant were false, there is no other and independent tortious conduct alleged.
The fifth cause of action for prima facie tort is dismissed insofar as the complaint fails to state a cause of action. A cause of action for prima facie tort requires proof of the intentional infliction of harm without any excuse or justification, by an act or series of acts which would otherwise be lawful, which results in special damages (Freihofer at 142; Curiano at 117; Burns Jackson Miller Summit & Spitzer at 332; Kickertz at 277; Smith at 558-559). Unless malevolence, meaning a desire to injure the plaintiff, is the sole motive for a defendant's conduct, there will be no recovery for a claim sounding in prima facie tort (Burns Jackson Miller Summit & Spitzer at 333 [1983]; Kickertz at 277; Smith at 558-559). The special damages pleaded in connection with a cause of action for prima facie tort must be specific and measurable (Bohn at 599). Thus, bare and conclusory allegations of damages, will not state a cause of action for prima facie tort (Wehringer at 586).
Here, the complaint fails to state a cause of action for prima facie tort insofar as it fails to allege that malevolence was the sole motivation for defendant's alleged conduct. Moreover, here, the damages alleged are conclusory, alleged to total $467.979,26. The foregoing figure is merely pleaded, never itemized and is therefore conclusory and insufficient to state a cause of action for prima facie tort.
The sixth cause of action for libel per se is dismissed insofar as the complaint fails to state a cause of action. Libel per se is a writing which exposes plaintiff to "public contempt, ridicule, aversion or disgrace, or induce[s] an evil opinion of him in the minds of right-thinking persons, and deprive[s] him of their friendly intercourse in society" (Rinaldi at 379). The elements of a defamation action are (1) the publishing of a false statement to a third party; (2) publishing said statement without authorization or privilege; (3) fault, judged at a minimum by a [*9]negligence standard; and (4) special harm or defamation per se (Dillon at 38; Salvatore at 563 [2d Dept 2007]). Statements are defamatory per se when they charge plaintiff with a serious crime, tend to injure another in plaintiff's trade, business or profession, allege plaintiff has a loathsome disease, or impute unchastity to a woman (Liberman at 435). Whether a statement is defamatory is a question of law for the court to determine (Aronson at 593; Franklin at 92). To that end, 
the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction 

(Dillon at 38; see Aronson at 594), and courts will not strain to find defamation where none exists (Cohn at 887; Dillon at 38; Fairley at 296). Accordingly, loose, figurative, or hyperbolic statements, even if deprecating are not actionable (Gross at 152; Dillon at 38). Notably, a plaintiff seeking to recover on a cause of action asserting defamation per se on grounds that a defendant's statements have hurt his trade, business or profession, must prove that the defamation is of the kind incompatible with his business, trade, office, or profession and that the "statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities" (Liberman at 436). The failure "to allege the time at which, the manner in which, and the persons to whom the publication was made, is fatal to a claim for defamation (Romanello at 455; Murphy at 301; Seltzer at 64).
Here, the complaint fails to state a cause of action for libel per se insofar as the complaint fails to identify to which subcontractors/vendors the alleged defamatory statements were made. Moreover, here, the alleged defamatory statements - confined to two email messages wherein it is alleged that defendant, by email, apprised plaintiffs' subcontractors/vendors that all punch list items on the project had been completed and that other than final retainage payments and less any charge backs, with respect to the project, August had been paid in full, such that all subcontractors/vendors should have been fully paid - are not defamatory. To be sure, it strains credulity to assert, as urged here, that these statements were injurious to plaintiffs, who are in the construction trade, since they do not besmirch or disparage them so as to subject them to public contempt or ridicule. Indeed, the complaint fails to plead, as urged that the statements were tantamount to an assertion by defendant that plaintiffs were willfully withholding payment from the subcontractors. Even if the complaint pleaded the foregoing, unless the defendant actually made such statements, the fact that otherwise non-defamatory statements can be subjectively construed in a defamatory way does not make those statements defamatory. Again, statements are defamatory per se when they charge plaintiff with a serious crime, tend to injure another in plaintiff's trade, business or profession, allege plaintiff has a loathsome disease, or impute unchastity to a woman (Liberman at 435), and these statements do none of the foregoing. Furthermore, where as here, the claim is that defendant's statements have injured plaintiffs' profession, plaintiff must prove and therefore plead that the defamation is of the kind, which is incompatible with their business, trade, office, or profession and that the "statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities" (Liberman at 436). Here, the statements attributed to defendant, which merely apprise the subcontractors that plaintiffs were paid, simply do not meet the legal standard for defamation. 
Accordingly, the instant motion is granted.

 PLAINTIFFS' CROSS-MOTION TO AMEND THE COMPLAINT
Plaintiffs' cross-motion seeking leave to amend the complaint is granted to the extent of allowing it to interpose the first cause of action in the amended complaint. Significantly, the amended complaint, attached to plaintiff's cross-motion, sufficiently states a cause of action against defendant for tortious interference with the contracts between August and its subcontractors/vendors.

 Standard of Review
Generally, leave to amend a pleading shall be freely granted absent prejudice or surprise resulting directly from the delay in seeking the proposed amendment (McMcaskey, Davies and Associates, Inc. v New York City Health & Hosps. Corp, 59 NY2d 755, 757 [1983]; Fahey v County of Ontario, 44 NY2d 934, 935 [1978]). Delay, however, in seeking leave to amend a pleading is not in and of itself a barrier to judicial leave to amend. Instead, "[i]t must be lateness coupled with significant prejudice to the other side, the very elements of the laches doctrine" (Edenwald Contracting Co. v City of New York, 60 NY2d 957, 958 [1983]). A failure to adequately explain the delay in seeking to amend the pleadings, if coupled with prejudice, will generally warrant denial of a motion to amend a pleading.
Where once, the proponent of an order seeking leave to amend a pleading was expressly required to demonstrate that the proposed amendment had merit (Thomas Crimmins Contracting Co., Inc. v City of New York, 74 NY2d 166, 170 [1989]["Where a proposed defense plainly lacks merit, however, amendment of a pleading would serve no purpose but needlessly to complicate discovery and trial, and the motion to amend is therefore, properly denied."]; Herrick v Second Cuthouse, Ltd., 64 NY2d 692, 693 [1984][Court concluded that defendant could amend its answer when the amendment would not prejudice plaintiff and where the amendment was found to have merit]; Mansell v City of New York, 304 AD2d 381, 381-382 [1st Dept 2003]), requiring the proffer of evidence establishing that the proposed amendment had merit (Curran v Auto Lab Serv. Ctr., 280 AD2d 636, 637 [2d Dept 2001]; Heckler Elec. Co. v Matrix Exhibits-N.Y., 278 AD2d 279, 279 [2d Dept 2000]), there is no longer such a requirement (MBIA Ins. Corp. v Greystone & Co., Inc., 74 AD3d 499, 500 [1st Dept 2010] ["On a motion for leave to amend, plaintiff need not establish the merit of its proposed new allegations."]; Lucido v Mancuso, 49 AD3d 220, 227 [2d Dept 2008] ["These cases make clear that a plaintiff seeking leave to amend the complaint is not required to establish the merit of the proposed amendment in the first instance."]). Instead, absent prejudice, a motion to amend a pleading ought to be granted unless the proposed amendment is palpably insufficient or patently devoid of merit[FN2]
 (US Bank N.A. v Murillo, 171 AD3d 984, 986 [2d Dept 2019]; WDF, Inc. v Trustees of Columbia Univ., 170 AD3d 518, 519 [1st Dept 2019]; MBIA Ins. Corp. at 500; Lucido at 226-227).
Leave to amend a complaint will not be granted unless the proposed amendment, as pleaded, establishes a cause of action (Thompson v Cooper, 24 AD3d 203, 205 [1st Dept 2005]; Ancrum v St. Barnabas Hosp., 301 AD2d 474, 475 [1st Dept 2003]; Davis & Davis v Morson, 286 AD2d 585, 585 [1st Dept 2001]). Moreover, since the court must examine the proposed pleading for patent sufficiency, it is axiomatic that the proposed pleading must be provided with [*10]a motion seeking leave to amend the same and that a failure to do so warrants denial of the motion (Loehner v Simons, 224 AD2d 591, 591 [2d Dept 1996]; Branch v Abraham and Strauss Department Store, 220 AD2d 474, 476 [2d Dept 1995]; Goldner Trucking Corp. v Stoll Packing Corp., 12 AD2d 639, 640 [2d Dept 1960]).
When leave to amend is sought in response to a motion seeking dismissal on grounds that the complaint fails to state a cause of action "the provident course of action for the motion court is to include the amended complaint in the record on the pending motion, which should then be granted or denied based on the sufficiency of the amended pleading (Uptown Healthcare Mgt. Inc. v Allstate Ins. Co., 117 AD3d 542, 543 [1st Dept 2014]). Indeed, in such circumstance, if the proposed pleading fails to state a cause of axction, leave to amend ought to be denied (Washington Ave. Assoc., Inc. v Euclid Equip., Inc., 229 AD2d 486, 488 [2d Dept 1996] ["Here, the proposed amended complaint suffers from the same defects as the complaint with respect to the causation element of tortious interference with a contract. Accordingly, the court should not have granted leave to amend, since the merits of the proposed amended complaint were insufficient."]).

Discussion
Plaintiffs' cross-motion seeking leave to amend the complaint in accordance with the amended complaint appended to their cross-motion is granted solely to allow plaintiffs to interpose an amended complaint limited to the first cause of action sounding in tortious interference with the contracts between August and its subcontractors/vendors. 
As noted above, generally, leave to amend a pleading shall be freely granted absent prejudice or surprise resulting directly from the delay in seeking the proposed amendment (McMcaskey, Davies and Associates, Inc. at 757; Fahey at 935). Absent prejudice, a motion to amend a pleading ought to be granted unless the proposed amendment is palpably insufficient or patently devoid of merit (US Bank N.A. at 986; WDF, Inc. at 519; MBIA Ins. Corp. at 500; Lucido at 226-227). Because, leave to amend a complaint will not be granted unless the proposed amendment, as pleaded, establishes a cause of action (Thompson at 205; Ancrum at 475; Davis & Davis at 585 ), when leave to amend is sought in response to a motion seeking dismissal on grounds that the complaint fails to state a cause of action "the provident course of action for the motion court is to include the amended complaint in the record on the pending motion, which should then be granted or denied based on the sufficiency of the amended pleading (Uptown Healthcare Mgt. Inc. at 543). Indeed, in such circumstance, if the proposed pleading fails to state a cause of action, leave to amend ought to be denied (Washington Ave. Assoc., Inc. at 488).
Here, while it is clear that the amended complaint is a direct response to the fatal defects in plaintiffs' complaint, about which plaintiffs were apprised by defendant, the Court's role nevertheless remains essentially the same - to accept all allegations therein as true and determine whether the causes of action asserted are sufficiently pleaded. If, however, like the complaint, the amended complaint fails to plead facts sufficient to establish the causes of action alleged therein, leave to amend the complaint will be denied because a complaint which fails to sufficiently plead a cause of action is, of course, palpably insufficient and/or patently devoid of merit.
A review of the amended complaint, which is nine pages longer than the complaint, evinces that the first cause of action for tortious interference with contract states a cause of action. Unlike the first cause of action in the complaint, premised on interference with the [*11]contracts between August and its subcontractors/vendors, which failed to plead, as required, that defendant's conduct was bereft of any economic justification and that but for defendant's conduct, there would have been no breach of the contracts between August and its subcontractors/vendors, the amended complaint pleads these necessary allegations. To be sure, paragraph 67 of the complaint alleges that the "contracts between August and its subcontractors would not have been breached or impaired, but for DeGroat's improper and intentional malevolent conduct" (NY St Cts Elec Filing [NYSCEF] Doc No. 14 at 11). Additionally, paragraph 67 of the amended complaint states that "DeGroat's false statements and other tortious conduct were made without any economic justification for him" (id. at 12).
With regard to the second cause of action in the amended complaint, which like the second cause of action in the complaint is for tortious interference with contract, premised on interference with the contract between August and CMSV, the complaint fails to plead a cause of action insofar as it fails to allege, as required that but for defendant's conduct, CMSV would not have breached the agreement between August and CMSV (Pursuit Inv. Mgt. LLC at 581; Burrowes at 373; Cantor Fitzgerald Assoc., L.P. at 204; Washington Ave. Assoc., Inc. at 487). Indeed, while the amended complaint cured the failure to plead that defendant acted without economic justification (see NY St Cts Elec Filing [NYSCEF] Doc No. 14 at 14 ["DeGroat's improper actions, including all his communications to August's subcontractors, were done by DeGroat, with malice, without economic justification, and were calculated to impair August's business for DeGroat's personal gain, which included, among other things, withholding money from August for the benefit of DeGroat's own company, not the CMSV herein, which company is owned by DeGroat and was an August subcontractor on the Project."]), which afflicted the complaint, the amended complaint nevertheless fails to plead a cause of action for tortious interference with the contract between August and CMSV.
The third and fourth causes of action in the amended complaint for tortious interference with August and Tonaj's prospective economic advantage, respectively, premised on the inability to enter into new contracts with plaintiffs' subcontractors/vendors, fail to state a cause of action. Significantly, while the amended complaint alleges that defendants' actions were solely motivated by malice, alleges that defendant's conduct impeded the consummation of contracts with third-parties, and identifies at least one third-party - Urban GC, a subcontractor which plaintiffs allege was sent emails by defendant - the second amended complaint suffers from the same affliction that plagued the complaint. Significantly, the amended complaint fails to identify the third-parties, with whom but for defendant's conduct, plaintiffs would have consummated new agreements. Moreover, while the amended complaint identifies one of plaintiffs' subcontractors, Urban GC, there is no allegation that but for defendant's conduct, Urban GC would have entered into new agreements with plaintiff. This is fatal to the third and fourth causes of action for tortious interference with prospective economic advantage (Trepel at 429; Kickertz at 275; Am. Preferred Prescription, Inc. at 418). Lastly, once again, it bears mentioning that the deceit alleged by plaintiffs, which undergirds the instant causes of action is, for purposes of a claim for tortious interference with prospective business advantage, insufficient conduct as a matter of law (Kickertz at 275; Gertler at 490).
The fifth cause of action in the amended complaint, for prima facie tort, fails to state a cause of action. Much like the complaint, the amended complaint fails to specify and itemize the special damages incurred by plaintiffs (Wehringer at 586). Indeed, the amended complaint merely asserts that the damages incurred with respect to the instant cause of action total [*12]$467,979.26 (see NY St Cts Elec Filing [NYSCEF] Doc No. 14 at 18-19 ["Such conduct by Defendant has caused Tonaj to suffer irreparable harm and special damages in the amount of Four Hundred Sixty-Seven Thousand Nine Hundred Seventy-Nine Dollars and Twenty-Six Cents ($467,979.26), together with interest and attorneys' fees. . . . Such special damages include, but are not limited to, loss of income and profit that Tonaj would have received but for DeGroat's intentional, malicious conduct and the amount of such special damages is Four Hundred Sixty-Seven Thousand Nine Hundred Seventy-Nine Dollars and Twenty-Six Cents ($467,979.26), together with interest and attorneys' fees. These damages are specific and quantifiable and DeGroat's malicious conduct giving rise to such special damages, was done solely to injure Tonaj."]).
The sixth cause of action in the amended complaint for libel per se fails to state a cause of action. The specific statements alleged to be libelous are identical to those alleged in the complaint, namely that August "ha[d] been paid in full other than their final retainage payments less any charge backs. All subs and vendors that are completed should have been paid in full at this time" (see NY St Cts Elec Filing [NYSCEF] Doc No. 14 at 19 ). While plaintiffs' amended complaint significantly augments the deleterious effects of the foregoing statements and characterizes how those statements were interpreted by them, this does not alter the Court's holding, that as a matter of law, the statements themselves are not defamatory, the reasons for which, were discussed above (see Foster at 751 [defamation requires a "false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society."]; Liberman at 436 [Actionable defamation, which hurts a plaintiff's trade or profession is of the kind incompatible with their business, trade, office, or profession and the "statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities."]). It is hereby
ORDERED that the complaint be dismissed. It is further
ORDERED that plaintiffs are granted leave to amend the complaint limited to interposing the first cause of action therein. It is further
ORDERED that plaintiffs serve the amended complaint, as limited by this Decision and Order, within 30 days of service of this Decision and Order upon them, with Notice of Entry. It is further
ORDERED that the defendant serve a copy of this Decision and Order with Notice of Entry upon plaintiffs within thirty (30) days hereof.
This constitutes this Court's decision and Order.
Dated : 6/21/23
FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1: Here, insofar as the false statements alleged are not libelous per se as a matter of law, and every other cause of action premised on said statements has been dismissed, the statements do not constitute independent tortious conduct. 

Footnote 2: In this Court's view, this is a distinction without a difference. In other words, there is really no way to ascertain whether a pleading is palpably insufficient or patently devoid of merit unless the proponent of the amendment proffers evidence in support of the merits of the amendment. Thus, but for semantics, the old rule and the new one are essentially the same.