■ KIRK BURROWES, Respondent, v SEAN COMBS, Also Known as PUFF DADDY and Others, et al., Appellants, et al., Defendant. KIRK BURROWES, Respondent, v SEAN COMBS, Also Known as PUFF DADDY and Others, et al., Defendants, and KENNETH MEISELAS, Appellant. [808 NYS2d 50]—

Order, Supreme Court, New York County (Charles Edward Ramos, J.), entered May 4, 2005, which denied defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (1), (5) and (7) and 3016 (b), unanimously reversed, on the law, with costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

This action for breach of contract, conversion through force and intimidation, turnover, common-law fraud, unjust enrichment, accounting and constructive trust, arises out of a 1996 incident in which defendant Combs allegedly menaced plaintiff with a baseball bat, while defendant Meiselas, Combs's attorney, demanded that plaintiff sign an instrument forfeiting all interest in defendant Bad Boy Entertainment, Inc. Plaintiff further asserts a claim that defendants committed tortious interference with a contract for talent management between plaintiff and recording artist Mary J. Blige, when Combs, aided by Meiselas, persuaded Blige to stop working with plaintiff. Furthermore, plaintiff alleges that defendant Combs announced his intent to ostracize plaintiff in the hope of precluding plaintiff from achieving success in the music industry.

With the exception of plaintiff's tortious interference with contract claim, all present causes of action stem from the alleged 1996 incident, and are therefore barred by the applicable statutes of limitations (*see* CPLR 213, 214 [3]). To the extent plaintiff alleges defendants made certain promises as late as 2001 that could toll the applicable limitations period, they were not in writing signed by defendants, as required by General Obligations Law § 17-101 (*see Scheuer v Scheuer*, 308 NY 447, 452 [1955]; *Dillon v Peretti*, 176 AD2d 497 [1991]).

The doctrine of collateral estoppel bars plaintiff from successfully relying on equitable estoppel to toll his time in which to sue. In a prior action filed in the Southern District of New York in 2003, plaintiff asserted two Racketeer Influenced and Corrupt Organizations Act (RICO) claims, conspiracy to commit further RICO violations, tortious interference with contract, breach of contract, unjust enrichment and promissory estoppel. In March 2004, the Southern District dismissed that action in its entirety, having found the RICO claims barred by the four-year statute of limitations and declining to exercise supplemental jurisdiction over the state law claims (*see Burrowes v Combs*, 312 F Supp 2d 449, 451 [SD NY 2004], *affd* 124 Fed Appx 70 [2d Cir 2005]). The same day plaintiff appealed the Southern District's order of dismissal, he commenced the instant action based on factual allegations practically inseparable from those

stated in the federal complaint. The Second Circuit affirmed and found that plaintiff had not "alleged any facts suggesting that defendants prevented him from discovering the nature of his RICO claims within the limitations period" (124 Fed Appx at 71).

In a RICO case the statute of limitations can be tolled if the plaintiff establishes both "fraudulent concealment" of the violation and that the plaintiff exercised "due diligence" to discover the claim (*see Tho Dinh Tran v Alphonse Hotel Corp.*, 281 F3d 23, 36 [2d Cir 2002]). Similarly, in New York, "[i]n order to prevail on the theory of equitable estoppel, the party seeking estoppel must demonstrate a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position" (*River Seafoods, Inc. v JPMorgan Chase Bank*, 19 AD3d 120, 122 [2005], *lv granted* 5 NY3d 715 [2005]). The Second Circuit has already found that plaintiff has failed to allege facts suggesting that defendants prevented him from discovering the nature of his RICO claims within the limitations period. As the IAS court found, the allegations in the state action are virtually identical to or substantively the same as those underlying the RICO claims. Accordingly, plaintiff is barred from relitigating whether defendants should be equitably estopped from asserting the statute of limitations.

Plaintiff's appellate brief to the federal court evidences that he was afforded a full and fair opportunity to litigate his equitable estoppel argument. Thus, the collateral estoppel doctrine governs here (*see Browning Ave. Realty Corp. v Rubin*, 207 AD2d 263 [1994], *lv denied* 85 NY2d 804 [1995]). That the federal court declined to exercise jurisdiction over the state claims asserted is not dispositive, nor is the fact that the federal courts never explicitly stated that May 1996 was the operative date for timeliness. The Second Circuit's rejection of plaintiff's equitable estoppel argument necessarily determined the same issue raised now with respect to whether his claims in the state action, based on the same allegations, should be heard (*see Pinnacle Consultants v Leucadia Natl. Corp.*, 94 NY2d 426, 432-433 [2000]).

Furthermore, plaintiff's complaint fails to set forth the necessary allegation that he was unaware of the true facts forming the basis of his claims until after the applicable time period expired. Although plaintiff alleges that Combs continued to promise him that he would receive a portion of Bad Boy's profits and that he was a Bad Boy shareholder through 2001, a review of the complaint shows that such reliance was not reasonable, in that plaintiff, allegedly, had already been threatened by de-

fendant Combs with a bat in 1996, and that plaintiff's salary was terminated in 1998. As a matter of law, plaintiff's reliance on defendant Combs's alleged promises under these circumstances is hardly justifiable.

Plaintiff has also failed to plead sufficient facts regarding his tortious interference with contract claim. In order to establish a cause of action for tortious interference with his contractual relations with Ms. Blige, plaintiff was required to allege: (1) the existence of a valid contract between him and Ms. Blige; (2) defendants' knowledge of that contract; (3) defendants' intentional procuring of the breach of that contract; and (4) damages (see *Click Model Mgt. v Williams,* 167 AD2d 279, 280 [1990], *lv denied* 77 NY2d 805 [1991]). Specifically, a plaintiff must allege that the contract would not have been breached "but for" the defendant's conduct (see *Washington Ave. Assoc. v Euclid Equip.,* 229 AD2d 486, 487 [1996]). Although on a motion to dismiss the allegations in a complaint should be construed liberally, to avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation (see *Williams & Co. v Collins Tuttle & Co.,* 6 AD2d 302, 307 [1958], *lv denied* 5 NY2d 710 [1959]). In addition to offering only scant speculation without the support of relevant facts, plaintiff has failed to allege that but for defendants' actions Ms. Blige would have continued her contract with plaintiff. Consequently, plaintiff's contentions are insufficient to state a cause of action against defendants for tortious interference with contractual relations. Concur—Buckley, P.J., Friedman, Sullivan and Nardelli, JJ.